IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VAL G. JACKSON,

        Plaintiff,

vs.

Case No. 04-1234-JTM

JO ANNE BARNHART, Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Val G. Jackson has applied for disability insurance and supplemental security income benefits. His application was first denied by the ALJ on November 12, 2002, a decision ultimately affirmed by the Appeals Council on May 21, 2004. There are four allegations of error by Jackson. First, that the ALJ erred in failing to conduct a proper credibility analysis under Social Security Ruling 96-7p. Second, that the ALJ violated SSR 02-1p by failing to consider the effect of Jackson's obesity. Third, that the ALJ erred in finding Jackson's depression not severe. Fourth, that the ALJ violated Ruling 00-4p.

Plaintiff-claimant has stated that he became disabled due to conditions including degenerative disc disease of the lumbar spine, anxiety, obesity, depression, and high blood pressure. Jackson was born on October 12, 1951. He has completed the eleventh grade, and has worked as a certified nurse assistant.

The ALJ's opinion found that Jackson is subject to limitations, but not to the extent claimed by him. The opinion notes Jackson's history of obesity, hypertension, and depression. (Tr. 16-17). A 2003 MRI also detected L4-5 and L5-S1 degenerative disc disease, without nerve root

impingement. Jackson was advised to exercise 150 minutes per week. He later reported that he was feeling better. The ALJ concluded that Jackson suffered severe impairment from degenerative disc disease, obesity, hypertension, dysthymia, personality disorder, and diabetes. He concluded that Jackson's mental impairment was severe. (Tr. 17).

Nevertheless, the ALJ concluded that Jackson did not meet any listed impairment based on his ailments, "neither singularly nor in combination," because of a lack of any marked restriction on his activities (with respect to listing 12.00), his ability to walk and lack of nerve root impingement (listing 1.04), and an absence of evidence showing neuropathy or acidosis (listing 9.08). The ALJ concluded that Jackson had the residual functional capacity to perform a narrow range of light work. (Tr. 18). The ALJ noted and found persuasive the opinion of the consulting Dr. Kim, who found Jackson could perform a range of light exertional-level work. The ALJ also noted the opinions expressed by Dr. Perkins, Dr. Schlageck, Robert Blume (Ph.D.), T.A. Moeller (Ph.D.), Bruce Nystrom (Ph.D.), and Ellen A. Horsch (Ph.D.). (Tr. 19-20). The ALJ determined that Dr. Schlageck's opinion (that Jackson had chronic depression) as a treating physician was to be given less than controlling weight because he was a family physician rather than a mental health specialist, because Jackson's statements to mental health experts were inconsistent, and Schlageck's own opinion was based on Jackson's inconsistent and subjective statements and was uncorroborated in his notes.

With respect to Jackson's credibility, the ALJ noted the claimant's markedly fluctuating earnings in the years from 1996 to 1999. The ALJ also found that Jackson made inconsistent and evasive statements regarding his work history. (Tr. 21). He was also inconsistent in his statements regarding his daily activities. (Tr. 21-22).

The ALJ found, based upon testimony of a vocational expert, that Jackson could not perform his past work. However, the ALJ determined that Jackson could perform a range of jobs requiring light exertional work. (Tr. 22-23). The detailed facts are set forth independently in the ALJ's opinion (Tr. 15-22), the brief of Jackson (Dkt. No. 9, at 3-9), and the Commissioner's response (Dkt. No. 12, at 4-13), and incorporated herein.

The ALJ did not err in his evaluation of Jackson's subjective complaints, but considered them in a manner consistent with the requirements of law. *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (if an impairment could be reasonably expected to produce some pain, the ALJ must consider all relevant evidence). The record before the court indicates that the ALJ's opinion was not erroneous, but rendered by extensive findings which are well-grounded in the evidence. The ALJ correctly noted that although Jackson had hypertension and diabetes, the evidence did not support any finding of limitations based on those impairments. Jackson has admitted he can lift up to 60 pounds. His gait was observed in October 2003 as normal and without dysfunction. Although MRI tests have shown degenerative disc disease, they have also shown a lack of nerve root impingement. The ALJ also correctly noted inconsistencies between what Jackson had said about his condition to different people. The court finds no error with respect to the ALJ's credibility assessment, which is supported by the record as a whole.

Jackson contends that the ALJ erred in failing to determine that he suffered from a severe impairment due to his depression. But the ALJ did explicitly find that Jackson had a severe impairment due to dysthymia and personality disorder, and the ALJ had valid justification – discussed in detail in the ALJ's opinion – for discounting the diagnosis of Dr. Schlageck that Jackson suffered from "chronic depression." (Tr. 199). In contrast, when Jackson was examined in August

3

of 2000 by T.A. Moeller (Ph.D.), Moeller noted Jackson was not receiving any additional mental health care, that Jackson was focused on obtaining disability benefits but was otherwise in the average range of thought content and was free of suicidal ideation or delusion. Jackson denied any difficulties in dealing with the stresses of ordinary life. Jackson was diagnosed with dysthymia rather than depression in September and October of 2003. The claimant has failed to show that the ALJ's conclusion was in error.

The claimant also contends that the ALJ failed to give proper evaluation to his obesity. The court finds that the ALJ also did not err in this respect. The ALJ explicitly concluded that Jackson's obesity was a severe impairment. (Tr. 23). The ALJ in fact repeatedly references obesity throughout his opinion, and it is implicitly referenced in the ALJ's detailed conclusions with respect to Jackson's residual functional capacity such as his ability to stand, sit, and walk. The court finds no merit in claimant's argument.

Finally, Jackson argues that the ALJ erred in his reliance on the vocational expert's testimony that he could perform the jobs of either security monitor or photocopy machine operator. This argument is without merit. The ALJ's opinion sets forth in detail the elements of Jackson's residual functional capacity as a basis for the vocational findings. Jackson could lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand, walk or sit for six hours in an eight-hour work day (so long as he could sit for 45 minutes at a time, and change positions to standing and stand for 45 minutes); and was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers and maintain socially appropriate behavior. The ALJ's conclusions are supported by substantial evidence.

Moreover, claimant suggests that there is some conflict between the evidence and the two positions cited by the vocational expert. Specifically, claimant argues that he could not perform the job of security monitor because of his limitations on interacting with the general public, and the job of security monitor has changed since it was documented in the Dictionary of Occupational Titles (DOT). Claimant is mistaken with respect to the security monitor position; the DOT specifications do not require such persons to communicate with the general public, only that they communicate over the telephone with their supervisors. DOT No. 379.367-010. The position simply does not require contact with the general public, and is within Jackson's limitations. Claimant's arguments with respect to the photocopy machine operator position – that its requirements have changed since the job was first defined in the DOT – are simply speculation; the claimant provides absolutely no evidence to support the contention that the nature of the position as described by the DOT is in any way inaccurate.

IT IS ACCORDINGLY ORDERED this 13th day of September, 2005, that the appeal of the plaintiff-claimant is denied, and the decision of the Commissioner is affirmed.

                                                s/ J. Thomas Marten  
                                                J. THOMAS MARTEN, JUDGE